E-FILED
Thursday, 09 January, 2020 03:46:36 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS RUSH, )<br>   Plaintiff, )<br>)<br>vs. )<br>)<br>TERRI KENNEDY, et. al., )<br>   Defendants ) | No. 19-1365 |

CASE MANAGEMENT ORDER

Plaintiff, a pro se prisoner, filed a complaint, a motion to proceed in forma pauperis (IFP), a motion for appointment of counsel, and a motion for emergency injunctive relief. [ 1, 3, 5, 6]. The Court denied Plaintiff's motion to proceed IFP noting he currently had $1,175 in his Trust Fund Account. *See* November 15, 2019 Text Order. Plaintiff has now paid the filing fee in full.

I. MERIT REVIEW

Before considering Plaintiff's motion for emergency injunctive relief, the Court is first required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff alleges 19 Defendants violated his constitutional rights at Pontiac Correctional Center including Warden Terri Kennedy; Major Leininger; Mental Health Worker Todd Nelson; Lieutenants Biros, Torres, and Whitecotton; Nurses Sherry

1

Powers and Nicky; and Correctional Officers Farley, Dame, Bertville[1], Henson, Henkel, Pufall, Newkirk, McBride, John Doe #1, John Doe #2, and John Doe # 3.

On July 1, 2019, Plaintiff informed a mental health worker that he had inserted a piece of metal "deep inside of his arm that was causing him excruciating pain." (Comp, p. 11). The mental health worker notified security and health care staff.

Plaintiff claims typically when an inmate is escorted to the Health Care Unit, the inmate is handcuffed to a waist chain. However, Defendants McBride and Newkirk told Plaintiff a new policy required them to cuff Plaintiff behind his back because of his sexual misconduct violations. Defendants claimed the policy was instituted by Warden Kennedy and Lieutenant Whitecotton.

Plaintiff explained he was in severe pain and forcing him to cuff with his hands behind his back would cause greater pain. Plaintiff also said he had a "waist-chain permit that was in the process of being renewed." (Comp., p. 12). Finally, Plaintiff told the officers the doctor would not be able to remove the metal from his arm with the cuffs. Nonetheless, Defendants refused to use a waist-chain.

Plaintiff asked to speak to a supervisor and Defendant Biros responded. Biros again stated the new policy required Plaintiff to be cuffed behind his back. Biros then called Defendant Nurse Nicky and a three-man tactical team. Plaintiff refused to leave unless a waist chain restraint was used to prevent further pain and injury. The nurse

---

[1] A grievance response indicates the counselor was unable to locate any Pontiac Correctional Center employee with the last name of Bertville or Bertfield. (Comp., p. 26).

and tactical team members interpreted Plaintiff's statements as a refusal for further medical treatment and left. Plaintiff says he was left to suffer in pain.

Plaintiff next claims Defendant Leininger ordered Defendants Farley and Dame as well as unspecified tactical team members to forcefully remove Plaintiff and take him to his cell. Plaintiff does not clarify where he was in the prison, nor how long this occurred after his encounter with Defendant Biros.

Plaintiff does allege the officers cuffed him with his hands behind his back. Plaintiff also says his leg shackles were then connected to a bolt in the floor and he was forced to sit with his head and neck in his lap. Plaintiff said the position caused extreme pain in his neck, back, arm, hands, wrist and shoulder.

An unspecified Defendant then squeezed his buttocks and whispered in his ear, "keep your head down dick sucker." (Comp., p. 14). Plaintiff told the officers they were hurting him and he wanted to file a Prison Rape Elimination Act (PREA) complaint due to the alleged sexual assault. Plaintiff claims Defendants Dame, Cullman, and Nelson took no action even though they saw Plaintiff "was being assaulted." (Comp., p. 14).

The officers next put Plaintiff in a "wheelchair restraint" and took him back to his cell. (Comp., p. 14). Once at his cell, Plaintiff continued to yell he wanted to file a PREA report. Officers instructed Plaintiff to kneel on the floor, so they could remove his shackles. However, Plaintiff says the officers pulled the shackles through the chuckhole with such force it caused "his left and right wrists to cut open. Blood began pouring and squirting out of his wrists." (Comp., p. 15). Plaintiff was jumping up and down, screaming from the pain, and showing his wrists to Defendant Dame and the

other tactical team members. Defendants Dame and Bertville then began to taunt the Plaintiff and told him they hoped he would die. Ultimately, the officers left Plaintiff's cell without providing any medical care.

Plaintiff says he also asked Defendant Officers Henson, Henkel, and Pufall for medical attention, but they ignored his obvious injuries.

At some unspecified point, Correctional Officers McBrice, Newkirk, Maddox, and Leslie told Plaintiff they would get him help. Defendant Nurse Sherry responded, but Plaintiff says the nurse refused to provide any care, and instead said "let his nigga die" and walked off. (Comp., p. 17).

Correctional Officers McBride and Newkirk then took Plaintiff to see Defendant Nurse Nicky. Plaintiff was handcuffed behind his back, and a jump suit was wrapped around his arm to stop the bleeding. Nurse Nicky sent Plaintiff to urgent care where he received stiches for his injuries.

Plaintiff claims he has suffered with nightmares and flashbacks from the incident. Plaintiff also says he has "nonstop" pain in his wrists, arms, hands and shoulders," but Plaintiff also says he sometimes experiences "numbness" in his hands and wrists. (Comp., p. 18). Despite his on-going problems, officers still force Plaintiff to wear behind-the-back handcuffs whenever he is escorted to mental health group meetings, mental health sessions, or other areas in the prison. (Comp., p. 18). Plaintiff further claims he has been denied pain medication, but does not clarify which medical provider refused the medication. In addition, Plaintiff does not state whether he has requested a medical permit for waist chain restraints. Based on his allegations, Plaintiff

4

is asking for one and a half million dollars in damages and transfer to a mental health facility.

Plaintiff has attached a copy of his July 1, 2019 grievance concerning at least a portion of the allegations in his complaint. [2] A September 6, 2019 response points to an Administrative Directive requiring handcuffs and shackles when moving any inmate who is "confined pending investigation or in disciplinary segregation." (Comp, p. 29). There is no indication of a new policy concerning inmates with specific allegations of sexual misconduct.

In addition, the grievance officer reviewed 13 incident reports based on the interactions with Plaintiff on July 1, 2019. Based on this review, the grievance officer believed Plaintiff was not handcuffed behind his back, but was instead cuffed to a wrist restraint. The responding officers each reported Plaintiff refused to cooperate with several commands. Officers further claimed Plaintiff injured his wrists when he began pulling his restraints into his cell, rather than comply with orders. Consequently, Plaintiff received a disciplinary ticket on July 1, 2019 for "Disobeying a Direct Order Essential to Safety and Security." (Comp., p. 29). Both Plaintiff and the Defendants indicate there may be a video recording of at least a portion of the events on July 1, 2019. (Comp, p. 29). It is also unclear from the pleadings whether Plaintiff lost any good time credits as a result of the disciplinary ticket.

---

[2] The facility administration determined Plaintiff's allegations did not involve a PREA issue and it was instead handled as a complaint concerning staff conduct. (Comp., p. 29, 30, 31).

Plaintiff has further attached various medical records to his complaint showing he did have a waist chain cuffing permit for a rotator cuff injury, but the documents are not relevant to his claims since they concern a prior time period. (Comp., p. 32-38).

The attachments also indicate Plaintiff continued to complain about officers handcuffing him with his hands behind his back. Plaintiff does not mention any other, specific handcuffing events in his complaint. However, Plaintiff argues in his grievance that officers should consider which restraints to use on a case-by-case basis.

The response to Plaintiff's September 11, 2019 grievance again noted officers were required to handcuff all segregation inmates behind their backs when leaving their cells. (Comp., p. 40). The grievance counselor further contacted the medical department and noted Plaintiff "was seen by provider and was denied an alternative cuffing permit." (Comp., p. 40). Plaintiff appealed this grievance to the ARB on October 15, 2019, but he chose to file his complaint on November 13, 2019. Therefore, it is very doubtful Plaintiff completed the grievance process for any claims other than the incidents which occurred on July 1, 2019.

Whether or not he did receive a response from the ARB, Plaintiff has failed to articulate a claim based on any policy requiring either segregation inmates or inmates with sexual misconduct offenses to be handcuffed behind their backs while moved throughout the facility. Prison administrators must have standard procedures in order to safety and efficiently operate a facility housing hundreds of offenders. Nonetheless, there is still an opportunity to consider inmates on a case-by-case basis. An inmate

may obtain a waist restraint cuffing permit if that inmate demonstrates a valid medical basis for the permit.

Plaintiff does not allege he had a cuffing permit on July 1, 2019 or anytime after. Furthermore, none of the named IDOC Defendants are doctors who can approve a cuffing permit.

Nonetheless, Plaintiff has articulated claims based on specific actions on July 1, 2019. For instance, Plaintiff told officers he had inserted a piece of metal into his arm and using the traditional handcuffs would cause greater harm and pain. Plaintiff also claims he told the Defendants he was in excruciating pain at the time. However, the Defendants left without obtaining any additional medical or mental health care for Plaintiff. For the purpose of notice pleading, Plaintiff has alleged Defendants McBride, Newkirk, Biros, and Nurse Nicky were deliberately indifferent to his serious medical or mental health condition.

While it is difficult to follow the timeline in the complaint, Plaintiff also Defendants Leinger, Dame, Farley, and the three John Doe Defendants forceable took him back to his cell on July 1, 2019. During this transport, Plaintiff says the officers placed him in painful restraints and caused significant injuries to his wrists. Plaintiff has adequately alleged the officers used excessive force in violation of his Eighth Amendment rights. Plaintiff also claims the Defendants committed the state law tort of battery.

Plaintiff further claims Officers Dame, Cullman, and Bertville failed to intervene to stop the use of excessive force. (Comp, p. 2). However, it is unclear from the

7

complaint if Officers Cullman or Bertville were even in the same area during this incident. In addition, Plaintiff alleges Defendant Dame was a member of the tactical team which used excessive force. Plaintiff has not clearly articulated a claim based on a failure to intervene.

Plaintiff has adequately alleged Officers Dame, Bertville, Henson, Henkel, Pufall, Nurse Sherry, and the three John Doe Defendants were deliberately indifferent to his new, wrist injury when they delayed providing medical care.

Plaintiff has also adequately alleged an Eighth Amendment violation based on his claim that an officer unnecessarily squeezed his buttocks in a degrading manner. "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). While Plaintiff does not identify the specific Defendant involved, he does state it was a member of the tactical team currently identified as John Doe #1, John Doe #2, and John Doe #3. (Comp., p. 15).

The Court notes in his list of potential allegations, Plaintiff claims additional Defendants were also responsible for using excessive force or failing to provide him with needed medical care. However, a Plaintiff must "show that the defendants were personally responsible for the deprivation of their rights" in order to hold them liable pursuant to 42 U.S.C. §1983. *See Wilson v. Warren Cty., Illinois*, 2016 WL 3878215, at *3 (7th Cir. 2016). "A defendant is personally responsible 'if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent.'"

*Id.* quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). For instance, Plaintiff cannot hold Warden Kennedy responsible for failing to provide him medical care simply because he is a supervisor. *See Ali v. West*, 2017 WL 176304, at *3 (E.D.Wis. Jan. 17, 2017)("[b]ecause personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions.").

Plaintiff has listed other violations without providing any factual support. For instance, Plaintiff says the Defendants retaliated against him for his "political connections" and complaints about prison conditions when they instituted a new cuffing policy. (Comp., p. 3). To state a retaliation claim, Plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir.2009) (internal quotations omitted). Plaintiff's political connections are not a protected activity, and Plaintiff has failed to identify any specific protected activity which occurred before July 1, 2019. In addition, it appears the cuffing guidelines were the result of an established Administrative Directive, not a change in policy.

Plaintiff has also failed to articulate a violation of his Equal Protection rights, a violation of the Americans with Disabilities Act, or an official capacity claim.

## II. MOTION FOR EMERGENCY INJUNCTIVE RELIEF.

Plaintiff has also filed a motion for a temporary restraining order and preliminary injunction. A temporary restraining order (TRO) can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. Fed. R. Civ. P. 65(b)(2). A court may only grant the motion if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). This relief is warranted "to prevent a substantial risk of injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). A TRO is an "emergency remedy" designed to "maintain the status quo until a hearing can be held on an application for a preliminary injunction." *Crue v. Aiken,* 137 F.Supp.2d 1076, 1082 (C.D.Ill. April 6, 2001).

On the other hand, a preliminary injunction can be issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

In this case, Plaintiff asks the Court to order Defendants to stop handcuffing him from behind his back when moving him in the facility due to the "irreparable nerve damage to his hands, wrists, fingers, and shoulders." (Mot., p. 2-3).

However, Plaintiff has not articulated a claim based on the overall policy of handcuffing segregation inmates. Instead, his complaint is limited to the decision to handcuff Plaintiff from behind when he told officers on July 1, 2019 that he had inserted a piece of metal in his arm and he was in severe pain.

Even if Plaintiff had articulated a claim based on the overall cuffing policy, Plaintiff does not allege he was ever diagnosed with permanent nerve damage or any other medical condition as a result of the handcuffs. The attached medical records concern another time period and a different injury. Furthermore, if Plaintiff is experiencing any medical issues due to the handcuffs, he must ask a facility doctor to approve a cuffing permit. None of the named Defendants can approve a permit based on a medical condition. Consequently, Plaintiff has failed to demonstrate his underlying case has some likelihood of success on the merits and he has failed to demonstrate he will suffer an immediate and irreparable loss if the Court does not intervene. For all the reasons stated, the motion for preliminary injunctive relief is denied. [6].

### III. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a motion for appointment of counsel. Plaintiff has no constitutional right to counsel in this case. In addition, the Court cannot require an attorney to accept pro bono appointment in a civil case. The most the Court can do is

ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992).

In considering Plaintiff's motion, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

In this case, Plaintiff has attached a copy of letter directed generally to "attorneys," but he has not provided a list of any specific attorneys contacted. (Mot, p. 4). The Court does not find Plaintiff has adequately demonstrated a reasonable attempt to find counsel on his own. Plaintiff's motion is denied with leave to renew. [5].

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges: a) Defendants McBride, Newkirk, Biros, and Nurse Nicky were deliberately indifferent to his serious medical or mental health condition on July 1, 2019, when they refused to provide medical or mental health care after Plaintiff inserted a piece of metal into his arm; 2) Defendants Leinger, Dame, Farley, and the three John Doe Defendants violated the Eighth Amendment and committed the state law tort of battery when they forcibly escorting Plaintiff to his cell on July 1, 2019 and causing injury to his wrists; 3) Officers Dame, Bertville, Henson, Henkel, Pufall, Nurse Sherry, and the three John Doe Defendants were deliberately indifferent to his new, wrist injury when

they delayed providing medical care; and 4) one of the John Doe Defendants violated Plaintiff's Eighth Amendment rights when he squeezed Plaintiff's buttocks in a degrading manner. The claims are stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for

effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

**10) Once all or most of the Defendants have filed an answer to the complaint, the Court will set this case for a hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. During this hearing, the parties must provide additional information concerning any unserved Defendants. In addition, the parties must clarify whether Plaintiff received a disciplinary ticket relating to any of the incidents in his complaint, and whether he lost good time credits as a result. Finally, Defendants must verify whether any relevant video or digital recordings exist.**

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Dismiss Defendants Kennedy, Torres, and Whitecotton for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A;**

**2) Deny Plaintiff's motion for preliminary injunctive relief, [6]; 3) Deny Plaintiff's motion for appointment of counsel with leave to renew, [5]; 4) Attempt service on Defendants pursuant to the standard procedures; 5) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 6) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 9th day of January, 2020.

                          s/ James E. Shadid
                          _____
                                JAMES E. SHADID
                        UNITED STATES DISTRICT JUDGE